UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RICHARD SAUL WURMAN : | |
|     Plaintiff : | |
| : | |
| v. : | C.A. No. 1: 16-cv-202 |
| : | |
| MARC HODOSH : | |
|     Defendant : | |

## ANSWER AND COUNTERCLAIM

The Defendant, Marc Hodosh (the "Defendant"), hereby answers the numbered paragraphs of the Plaintiff's Complaint as follows:

### PARTIES AND JURISDICTION

1. Defendant admits the allegations in Paragraph 1 of the Complaint.

2. Defendant admits the allegations in Paragraph 2 of the Complaint.

3. Defendant admits the allegations in Paragraph 3 of the Complaint.

4. Defendant denies that he executed contract in the State of Rhode Island, and admits the remaining allegations in Paragraph 4 of the Complaint.

5. Defendant admits the allegations in Paragraph 5 of the Complaint.

### FACTS

6. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 6 of the Complaint.

7. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 7 of the Complaint.

8. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 8 of the Complaint.

9. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 9 of the Complaint.

10. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint.

11. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 11 of the Complaint.

12. Defendant denies the allegations in Paragraph 12 of the Complaint.

13. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint.

14. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Complaint.

15. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Complaint.

16. Defendant lacks information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the Complaint.

17. Defendant admits that in 2008 Wurman invited Hodosh to his home in Newport, Rhode Island to discuss the TEDMED Conference, but denies the remaining allegations in Paragraph 17 of the Complaint.

18. Defendant admits that in March 2008 he presented to Wurman in Newport the written contract for the sale of TEDMED Conference to Defendant. Defendant denies the remaining allegations in said Paragraph 18.

19. The Contract referenced in Paragraph 19 of the Complaint speaks for itself, and to the extent the allegations in said Paragraph 19 are inconsistent therewith they are denied. Further

answering, Defendant denies that Wurman "was entitled to a one-half share of any other financial benefits derived from the TEDMED Conference" as alleged in said Paragraph 19. Defendant denies the remaining allegations in said Paragraph 19.

20. Defendant denies the allegations in Paragraph 20 of the Complaint.

21. Defendant admits that he and Wurman executed a second contract in December 2010 in Newport, Rhode Island. This contract executed by the parties speaks for itself, and to the extent the allegations in Paragraph 21 of the Complaint are inconsistent therewith they are denied. Defendant denies the remaining allegations in said Paragraph 21.

22. Defendant denies the allegations in Paragraph 22 of the Complaint.

23. Defendant denies the allegations in Paragraph 23 of the Complaint.

24. Defendant denies the allegations in Paragraph 24 of the Complaint.

25. Defendant denies the allegations in Paragraph 25 of the Complaint.

26. Defendant admits that he sold the TEDMED Conference to Walker in March 2011, but denies the remaining allegations in Paragraph 26 of the Complaint.

27. Defendant denies the allegations in Paragraph 27 of the Complaint.

28. Defendant denies the allegations in Paragraph 28 of the Complaint.

29. Defendant denies the allegations in Paragraph 29 of the Complaint.

30. Defendant denies the allegations in Paragraph 30 of the Complaint.

31. Defendant denies the allegations in Paragraph 31 of the Complaint.

*First Affirmative Defense*

The Complaint fails to state a claim upon which relief can be granted.

*Second Affirmative Defense*

Plaintiff's claims are barred by a lack of consideration.

### *Third Affirmative Defense*

Plaintiff is estopped from recovering on his claims by his own acts, actions, conduct and/or failure to act.

### *Fourth Affirmative Defense*

To the extent Plaintiff may have been owed any amount of money, he has been paid in full and, therefore, is not entitled to anything further.

### *Fifth Defense*

Plaintiff is barred from any recovery on the basis of the doctrine of "unclean hands".

### *Sixth Defense*

Plaintiff is barred from any recovery on the basis of the doctrine of waiver.

### *Seventh Defense*

Plaintiff is barred from any recovery on the basis of the doctrine of laches.

**WHEREFORE,** Defendant requests that the Court:

1. Dismiss the Complaint, or enter judgment in his favor;

2. Award to him the reasonable attorneys' fees and expenses incurred in defending against this action pursuant to R.I.G.L. § 9-1-45; and

3. Provide such other relief as the Court deems fair and appropriate.

## COUNTERCLAIM

### *Parties*

1. The Defendant and Plaintiff-in-Counterclaim, Marc Hodosh ("Hodosh"), is a citizen and resident of the Commonwealth of Massachusetts.

2. The Plaintiff and Defendant-in-Counterclaim, Richard Saul Wurman

("Wurman"), is a citizen and resident of the State of Florida.

*Facts*

3. Wurman was the founder of the original "TEDMED" conference in 1990's.

4. In 2008, after the passage of a four-year period during which no TEDMED Conferences were held, Wurman approached Hodosh with an offer to sell him TEDMED.

5. In or around April 9, 2008, Hodosh and Wurman entered into a contract (the "First Contract"), pursuant to which Wurman transferred "full ownership of TEDMED" to Hodosh. Wurman agreed to offer support and guidance as needed, and to attend the first TEDMED event under Hodosh's ownership.

6. Hodosh organized and hosted TEDMED conferences in 2009 and 2010, which were significantly larger and more profitable than the conferences prior to his ownership.

7. In or around December, 2010, after the 2010 TEDMED conference, Jay S. Walker ("Walker") approached Wurman with an inquiry about the possibility of purchasing TEDMED. Wurman informed Walker that Hodosh was now the owner of TEDMED.

8. At that time, and at all times relevant to this lawsuit, Wurman never challenged Hodosh's ownership of TEDMED, nor his right to sell TEDMED to Walker.

9. Wurman believed he could negotiate his own deal with Walker for his future relationship with TEDMED. Wurman specifically directed Hodosh to negotiate his own deal for the sale of TEDMED, and informed Hodosh that he would negotiate his own deal with Walker.

10. In or around December 1, 2010, Hodosh and Wurman entered into a second contract (the "Second Contract").

11. The Second Contract reconfirmed that Hodosh owned "100% of TED MED, Inc.

including all stock and rights".

12. After the Second Contract, Hodosh and Wurman each continued to negotiate separate deals with Walker and Walker's representative, Jose Suarez ("Suarez").

13. In or around January 3, 2011, Walker presented Hodosh and Wurman with a term sheet (the "Term Sheet") that contained two separate sections: "Agreement Relating to Marc" and "Agreement Relating to RSW".

14. On January 6, 2011, Wurman and Hodosh executed the Term Sheet and Wurman emailed it to Suarez.

15. Attempts were made to draft and finalize the legal documents for the agreements with Hodosh and Wurman as presented in the Term Sheet, but Walker was having issues with Wurman, which kept the deals from closing.

16. In early March, Walker separately informed Hodosh and Wurman that neither of the deals set forth in the Term Sheet would close, and that he needed to re-negotiate with each of them.

17. As a result of Wurman's actions during this time period, Walker reduced his offering price to Hodosh by $9,000,000. Walker also reduced his offer to Wurman.

18. After further negotiations, Hodosh agreed to a revised offer from Walker, but Wurman pushed back on the revised offer Walker made to him.

19. Hodosh thereafter encouraged Walker and Suarez to continue negotiating with Wurman.

20. On March 23, 2011, Suarez and Hodosh had reached agreement on documentation, while negotiations with Wurman continued.

21. Wurman knew that Hodosh and Walker had reached an agreement and were

6

prepared to close. With that knowledge, Wurman never claimed that Hodosh did not have the right to sell TEDMED without his consent. To the contrary, Wurman affirmatively and specifically informed Hodosh that the decision to sell or not to sell was his alone, and that he (Wurman) would not come between Hodosh and his deal with Walker.

22. On April 1, 2016, Hodosh entered into a contract for the sale of TEDMED, Inc. to TEDMED, LLC (the "Buyer"), a Walker-controlled entity (the "Agreement"). The Agreement provided for a $16,000,000 payment to Hodosh, with an earn-out opportunity of an additional $9,000,000 that was tied to the profitability of future TEDMED events (the "$9M Earn Out").

23. Pursuant to the Agreement, Buyer assumed the First Contract and the Second Contract.

24. Thereafter, Wurman continued to negotiate directly with both Walker and Suarez.

25. Upon information and belief, on or about April 11, 2011, Walker met with Wurman at Wurman's home, and Wurman made certain demands.

26. On April 14, 2011, incensed and believing that Walker had not met his demands, Wurman circulated a false, vindictive, and highly disparaging letter (the "Letter") to the TEDMED community, including attendees, sponsors, the media, etc. by wrongful use of a confidential mailing list with the purpose of harming the future prospects of TEDMED.

27. In the Letter, Wurman acknowledged the Agreement, and Hodosh's opportunity to earn additional compensation pursuant to the 9M Earn Out provision.

28. Wurman emailed the Letter with the specific intent of damaging TEDMED and hurting Hodosh, solely because he was angry, after the fact, that Hodosh has reached an agreement with Walker whereas he had been unsuccessful, even though Wurman had insisted on separate agreements.

## Count I

## Intentional Interference with Contractual Relations

29. Hodosh repeats and realleges the allegations of each preceding paragraph as if specifically set forth herein.

30. After Hodosh and Wurman had executed the Term Sheet, Wurman's actions caused Walker to reduce his offering price to Hodosh by $9,000,000.

31. Two weeks after Hodosh executed the Agreement, Wurman became incensed at his inability to reach a separate agreement with Buyer and Walker for his future relationship with TEDMED on terms he was demanding.

32. Wurman was fully aware of Hodosh's Agreement with Buyer and Walker, and specifically with the $9M Earn Out, as evidenced by his reference thereto in the Letter.

33. Wurman intentionally, maliciously and improperly interfered with the Agreement, and specifically with the $9M Earn Out, by emailing the Letter to a vast and interested audience so as to purposefully destroy and/or tarnish Hodosh's and TEDMED's image so that TEDMED Conferences would no longer be attended, sponsored and/or supported as they previously had been.

34. In the Letter, Wurman made false, misleading and disparaging statements regarding Hodosh and his decision to sell TEDMED.

35. In the Letter, Wurman made false, misleading and disparaging statements regarding Hodosh's and Walker's future plans for TEDMED.

36. In addition to the Letter, Wurman made other disparaging statements and undertook other intentional efforts to damage Hodosh and TEDMED, and in the process, further interfered with the Agreement and the $9M Earn Out.

8

37. The Letter and other efforts undertaken by Wurman to damage Hodosh and TEDMED did in fact interfere with the Agreement and the $9M Earn Out. As a result of Wurman's interference, Hodosh suffered significant monetary damage.

38. As a result of Wurman's interference, Hodosh suffered compensable damage to his reputation.

WHEREFORE, Hodosh requests judgment in his favor and relief as follows:

A. Award Hodosh compensatory damages in an amount to be proven at trial, but not less than $10,000,000, together with statutory interest; and

B. Award Hodosh any other relief considered just under the circumstances, including costs and reasonable attorneys' fees.

Marc Hodosh

By his Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh (#1139)
Lynne Barry Dolan (#3668)
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 490-7640

Dated: July 1, 2016

## CERTIFICATE OF SERVICE

      I hereby certify that on July 1, 2016, I caused a true copy of the foregoing document to be filed using the CM/ECF System. I also served a copy of the foregoing via First Class mail on the following counsel of record:

**R. Daniel Prentiss**
R. Daniel Prentiss, P.C.
50 Pine Street
Suite 200
Providence, RI 02903

                                              /s/ Meghan M. King