UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD SAUL WURMAN
    Plaintiff

v.                                  C.A. No. 1: 16-cv-202

MARC HODOSH
    Defendant

## DEFENDANT MARC HODOSH'S RULE 16(b) STATEMENT

The Defendant, Marc Hodosh (the "Defendant"), hereby submits this statement pursuant to Rule 16(b) of the Local Rules of Civil Procedure.

## Background

Plaintiff was the original owner of the TEDMED conference. In 2008, after a five-year period during which Plaintiff did not hold any TEDMED conferences, Plaintiff sought to sell TEDMED and the rights to organize and host future conferences. Plaintiff identified and approached the Defendant on the basis of his stellar reputation in the industry.

On or around April 9, 2008, the parties entered into a contract (the "Contract") which transferred all TEDMED ownership rights to Defendant. The Contract only obligated Defendant to host one conference. Defendant hosted conferences in 2009 and 2010. The conferences were significantly more successful than the TEDMED conferences hosted by Plaintiff, and Plaintiff profited well-beyond the parties' initial expectations.

In the fall of 2010, largely as a result of Defendant's achievements, Jay S. Walker and his representatives (collectively "Walker") sought to purchase TEDMED from Defendant. As the sole owner of TEDMED, Defendant had the right to sell TEDMED. In fact, during negotiations with Walker, this issue was never in dispute, and the parties entered into a second contract

whereby Plaintiff expressly acknowledged Defendant's unconditional right to sell TEDMED. At that time, Plaintiff's aim and focus was on securing his own separate deal with Walker for his continued association with and appearance at future TEDMED conferences.

In January 2011, Walker entered into Term Sheet agreements with Defendant and Plaintiff. Before the deals could be closed, Plaintiff re-ignited a dispute with Chris Anderson, the current owner of TED, and began to engage in erratic and ego-centric behavior. TED threatened to sue because of Plaintiff's actions. Inasmuch as Walker was counting on increasing the association of TED and TEDMED, Plaintiff's dispute with Anderson left Walker concerned and unwilling to go forward under the Term Sheet agreements. As a direct result of Plaintiff's conduct, Walker reduced his offer to Defendant for the purchase price of TEDMED by $9,000,000. Defendant accepted Walker's revised offer, and with Plaintiff's knowledge and consent (though not required), sold TEDMED to Walker on April 1, 2011. The terms of sale included a $9,000,000 earn-out opportunity for Defendant (the "$9M Earn-Out").

Walker continued to negotiate separately with Plaintiff for his future relationship and participation. Plaintiff was over-estimating his importance and Walker was wary of his temperament. Two weeks after Walker closed on the purchase of TEDMED, Plaintiff abruptly broke off negotiations, circulated a false, vindictive and highly disparaging email/letter regarding Defendant and Walker to the entire TEDMED community, including sponsors, attendees, media, etc. (the "Letter"). The Letter specifically referenced Defendant's $9M Earn Out opportunity, and was a deliberate attempt to damage TEDMED and the opportunity for Defendant and/or Walker to profit from future TEDMED conferences.

2

## Defenses to Plaintiff's Complaint

Plaintiff's complaint is for breach of contract, but Defendant fulfilled all of his contractual obligations to Plaintiff long ago. Defendant was not obligated to host a 2011 conference or any future conferences, and had the unconditional right to sell TEDMED without compensation to Plaintiff. Plaintiff's failure to receive compensation from Walker and/or in connection with future TEDMED events was the direct result of his own actions and conduct.

## Defendant's Counterclaim

Defendant's counterclaim is for intentional interference with contractual relations. The elements of this claim are (i) the existence of a contract; (ii) the alleged wrongdoer's knowledge of the contract; (iii) intentional interference; and (iv) damages resulting therefrom. Plaintiff intentionally interfered with Defendant's Term Sheet agreement with Walker for the purchase of TEDMED by engaging in conduct that deliberately threatened to harm TEDMED and lessen Walker's interest therein, and which resulted in a $9,000,000 reduction in the purchase price paid to Defendant. Weeks later, after Defendant closed on the sale of TEDMED to Walker, Plaintiff intentionally interfered with Defendant's $9M Earn-Out opportunity by circulating the Letter, which expressly references the $9M Earn Out provision. As a direct result of Plaintiff's Letter, Defendant never realized any additional compensation under the $9M Earn-Out.

Marc Hodosh
By his Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh (#1139)
Lynne Barry Dolan (#3668)
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 490-7640

Dated: September 7, 2016

# CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2016, I caused a true copy of the foregoing document to be filed using the CM/ECF System. I also served a copy of the foregoing via First Class mail on the following counsel of record:

**R. Daniel Prentiss**
R. Daniel Prentiss, P.C.
50 Pine Street
Suite 200
Providence, RI 02903

/s/ Joseph V. Cavanagh, Jr.